TIEMANN et al., Appellees and Cross–Appellants,

v.

UNIVERSITY OF CINCINNATI, Appellant and Cross–Appellee.

[Cite as *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97API10–1418.

Decided April 21, 1998.

*Brickler & Eckler, L.L.P., Luther L. Liggett, Jr.* and *Elbert J. Kram; Price Co., L.P.A.,* and *Edwin C. Price, Jr.,* for appellees and cross-appellants.

*Betty D. Montgomery,* Attorney General, and *William C. Becker,* Assistant Attorney General, for appellant and cross-appellee.

---

JOHN C. YOUNG, Judge.

Defendant, University of Cincinnati, desiring to have a university conference center built on university land, entered into a "ground lease" and subsequent "lease agreement," on December 1, 1996, with Fifth Third Leasing Company, by which Fifth Third would cause a conference center to be constructed, and then sublease the project site and center back to the university in return for the university's payment of "rent" over a twenty-seven-year period, with resulting ownership of the project by the university. On December 1, 1996, Fifth Third entered into a "development agreement" with Walsh, Higgins & Company ("Walsh, Higgins") to construct the conference center. The university was to make its "rent" payments from a "general receipts" fund, which was to include student fees, revenues resulting from operation of the conference center, unrestricted grants, gifts, donations and pledges, but not "monies raised by state appropriations and taxation."

After receiving notice of the construction project, plaintiffs filed a complaint in the Court of Claims on June 30, 1997, seeking declaratory and injunctive relief, asserting standing as a taxpayer, contractors, and contractor associations. The suit sought to enjoin defendants, the state of Ohio and University of Cincinnati, from proceeding with the construction project on defendants' land and bypassing Ohio's public works and bidding requirements of R.C. Chapter 153 and other enumerated statutes. The university, an instrumentality of the state created by R.C. Chapter 3361, maintains that an exemption from the public works laws exists in this instance, based on the wording of R.C. 3345.12(Q).

The university filed a motion to dismiss for lack of jurisdiction, for failure to join indispensable parties, for lack of standing of plaintiffs to bring suit, and for failure of plaintiffs to bring its suit within the statute of limitations. Defendant's motion was overruled by the trial court on August 15, 1997. The university and Walsh, Higgins then filed complaints in prohibition with this court, each of which was dismissed on respondents' motions on September 4, 1997. On October 16, 1997, after a trial on the merits, the Court of Claims entered judgment as follows: (1) dismissing two plaintiff contractors and one plaintiff contractors' association (Cincinnati Chapter National Electrical Contractor's Association, Inc., Charles Randolph Company, and Village Building Services, Inc.) for failure to prosecute their claims; (2) declaring that defendant was not relieved from complying with Ohio law on public works, competitive bidding, and construction contracting; (3) permanently enjoining defendant from proceeding any further on the conference center project without complying with the public works and bidding laws; and (4) denying plaintiffs' requests for attorney fees. The university's motion for a stay of judgment, filed in the Court of Claims, was overruled by that court on October 22, 1997. A motion to stay the trial court's judgment pending appeal was filed with this court on October 28, 1997, and was granted on November 6, 1997. The university filed its notice of appeal with this court on October 28, 1997, and plaintiffs-appellees (Robert W. Tiemann, Fred DeBra Company, Greater Cincinnati Plumbing Contractors Association, Inc., and Mechanical Contractors Association of Cincinnati, Inc.) filed their notice of cross-appeal with the court on November 12, 1997.

Appellant and the remaining appellees appeal and cross-appeal to this court from the judgment of the Court of Claims.

Appellant states as its assignments of error from the trial court the following:

"First Assignment of Error

"The trial court erred in deciding it had jurisdiction to hear and determine claims for declaratory and injunctive relief when plaintiffs sought no money damages.

"Second Assignment of Error

"The trial court erred in deciding it could issue a declaratory judgment and injunction affecting the contract rights of private entities that were not, and could not be, joined as parties.

"Third Assignment of Error

"The trial court erred when it determined that plaintiff Tiemann has standing to bring a taxpayer suit to challenge activities that do not involve the expenditure of tax revenues.

"Fourth Assignment of Error

"The trial court erred in determining that plaintiffs Fred B. DeBra Company, Greater Cincinnati Plumbing Contractors Association, Inc., and Mechanical Contractors Association of Cincinnati, Inc., have standing, when none of these parties presented evidence of injury in fact to a legally protected interest.

"Fifth Assignment of Error

"The trial court erred in holding that plaintiffs–appellees' claims were not barred by the Statute of Limitations, despite their receipt more than two years prior to commencement of the action of written notice of appellant's intention to proceed without complying with the public works statutes.

"Sixth Assignment of Error

"The trial court erred when it held that the Ohio public works statutes apply to construction by private entities of facilities that are to be leased to the University of Cincinnati pursuant to R.C. § 3345.12(Q)."

Cross-appellants (plaintiffs-appellees) state as their assignments of error from the trial court the following:

"First Assignment of Error:

"The trial court erred by failing to declare the illegal public contracts void *ab initio*.

"Second Assignment of Error:

"The trial court erred as a matter of law by applying the incorrect standard for consideration of an award of attorney fees to the prevailing parties."

In appellant's first assignment of error, appellant contends that the Court of Claims has no jurisdiction over appellees' claims for declaratory judgment and injunctive relief. R.C. 2743.03(A)(1) provides for the creation of the Ohio Court of Claims to hear civil actions permitted by the waiver of immunity contained in R.C. 2743.02 and further provides that the Court of Claims shall have full equity powers in all actions within its jurisdiction. R.C. 2743.02(A)(1) states:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter and in accordance with the same rules of law applicable to suits between private parties * * *."

This section goes on to state that "[t]o the extent that the state has previously consented to be sued, this chapter has no applicability." Thus, "the Court of Claims was not to have exclusive, original jurisdiction over claims from which the state was not immune prior to the effective date of the Act." *Friedman v. Johnson* (1985), 18 Ohio St.3d 85, 86, 18 OBR 122, 123, 480 N.E.2d 82, 83.

Claims for declaratory and injunctive relief were permitted against state agencies prior to the enactment of the Court of Claims Act. *Racing Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025. However, R.C. 2743.03(A)(2) provides that when a claimant in a civil suit against the state "files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of [the] section, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action." In *Upjohn Co. v. Ohio Dept. of Human Serv.* (1991), 77 Ohio App.3d 827, 603 N.E.2d 1089, this court found that, arguably, claims for declaratory and injunctive relief may be properly brought before the Court of Claims "only if (1) they arise out of the same circumstances as plaintiffs' claim for money damages, and (2) plaintiffs' claim for money damages is permitted by the state's waiver of immunity." *Id.* at 834, 603 N.E.2d at 1094.

Although appellees state in their complaint that their suit for relief against appellant is "without a claim for monetary damages," this court finds that appellees do allege some form of money damage in paragraphs 57 and 60 of their complaint arising out of appellant's actions, that damage being "not possible to calculate" at the time the complaint was filed.[1] The Ohio Supreme Court held in *Friedman* that jurisdiction is proper in the Court of Claims when "appellees sought injunctive, declaratory, and other necessary and proper relief." *Id.*, 18 Ohio St.3d at 87, 18 OBR at 123,, 480 N.E.2d at 83. In their prayer for relief, appellees seek declaratory judgment, injunctive relief, and "any further relief" from the Court of Claims.

This court held in *Am. Fedn. of State, Cty. & Mun. Emp. v. Blue Cross of Cent. Ohio* (1979), 64 Ohio App.2d 262, 18 O.O.3d 227, 414 N.E.2d 435, that the Court of Claims has jurisdiction to render a declaratory judgment and to provide other equitable relief appropriate and that "[p]laintiffs' failure to expressly pray for monetary damages is not a defect in their complaint for which the complaint

---

1. In *State ex rel. Univ. of Cincinnati v. Court of Claims of Ohio* (Sept. 14, 1997), Franklin App. No. 97APD08–1068, unreported (memorandum decision), this court dismissed the appellant's complaint in prohibition, stating, "[I]t is clear from the text of plaintiffs-appellees' complaint that the damage 'not possible to calculate' is monetary damage that has been, is or will be suffered by plaintiffs due to the inability to bid on the building contracts in question. Plaintiffs-appellees claim in paragraph 25 of their complaint a construction cost for the structure in question of over $68,000,000 and, that, by appellant's failure to follow bidding procedures for 'public works projects' set out in R.C. 153.01 *et seq.* as well as other Revised Code sections, appellees are foreclosed from effectively bidding for and obtaining certain contracts for the construction project. Appellees claim in paragraphs 56 and 57 of their complaint that such inability to effectively bid will 'deprive [appellees] of their legal rights and benefits,' such deprivation causing appellees damage 'not possible to calculate.' "

should be dismissed." *Id.* at 267, 18 O.O.3d at 230, 414 N.E.2d at 439. The court also held:

"To require plaintiffs to set forth the calculated amount [of damages] due * * * before determining that the state owes them anything would seem to subvert one of the purposes for which the Declaratory Judgment Act was adopted." *Id.* See, also, *Plastic Surgery Associates, Inc. v. Ratchford* (1982), 7 Ohio App.3d 118, 7 OBR 151, 454 N.E.2d 567.

■ The court stated further that the jurisdiction of the Court of Claims to render declaratory judgment against the state is not ancillary to a request for money damages. *Id.* at 121, 7 OBR at 154, 454 N.E.2d at 571–572. This court finds that in addition to claims for declaratory and injunctive relief, appellees did seek monetary relief in a civil action against the state of a type permitted by the waiver of immunity contained in R.C. 2743.02 and over which the Court of Claims, therefore, has jurisdiction. *Friedman,* 18 Ohio St.3d at 87, 18 OBR at 123, 480 N.E.2d at 83–84; *Racing Guild,* 28 Ohio St.3d at 321, 28 OBR at 389, 503 N.E.2d at 1029. See, also, *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 72, 23 OBR 200, 202–203, 491 N.E.2d 1101, 1104–1105.

■ The Court of Claims has jurisdiction over an action for declaratory and injunctive relief arising out of a civil action against the state predicated upon the actions or inaction of a state agency pursuant to R.C. 2743.03(A)(2), and appellees have brought such a suit in the Court of Claims asking for declaratory, injunctive, and "any further" relief. For the foregoing reasons, this court finds that the Court of Claims does have jurisdiction over appellees' claims.

Accordingly, appellant's first assignment of error is overruled.

Appellant, in its second assignment of error, claims that the trial court erred in deciding issues affecting unrepresented parties and parties "that were not, and could not be, joined as parties." Appellant contends that the third-party contract rights of Walsh, Higgins were adversely affected by the decision of the Court of Claims in that Walsh, Higgins has an interest in the outcome of the case and that Walsh, Higgins has no adequate forum in which to raise its objections or claims in the matter. Appellant cites as its authority Civ.R. 19, which provides for the joining of a party in an action if joinder is feasible. Civ.R. 19(A) states that parties claiming an interest in the subject matter of an action must be joined if the party's absence from the proceedings, as a practical matter, impedes, or impairs the party's ability to protect that interest. Appellant also cites R.C. 2721.12 of the Declaratory Judgment Act, which states, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration."

■ The Ohio Supreme Court held that a person's inability to participate in a certain action "does not foreclose the possibility of other adequate remedies." *State ex rel. Marks v. Indus. Comm.* (1992), 63 Ohio St.3d 184, 186, 586 N.E.2d 109, 111. It is well established that the ability of a person to pursue his or her own declaratory judgment action constitutes an adequate remedy at law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225.

■ R.C. 2743.03(A)(1) permits the Court of Claims to "entertain and determine all [claims], counterclaims, cross-claims, and third-party claims" properly brought before it. The statute does not permit a nonparty, such as Walsh, Higgins, to intervene or be joined or otherwise participate in a Court of Claims action. R.C. 2743.02(E) also states, "The only defendant in original actions in the court of claims is the state." R.C. 2743.02(E) necessarily limits the parties that may participate in a Court of Claims action to plaintiffs and the defendant state of Ohio. Therefore, as a practical matter, Walsh, Higgins may not be joined in the action under Civ.R. 19. Further, "[p]ractice and procedure in the Court of Claims is governed by the Rules of Civil Procedure, unless such rules are 'inconsistent' with R.C. Chapter 2743." *State ex rel. Moritz v. Troop* (1975), 44 Ohio St.2d 90, 92, 73 O.O.2d 349, 351, 338 N.E.2d 526, 528, citing R.C. 2743.03(D); see, also, *Basham v. Jackson* (1978), 54 Ohio St.2d 366, 368, 8 O.O.3d 385, 387, 377 N.E.2d 491, 492. Clearly, the legislature did not intend to permit a nonparty to intervene in a Court of Claims action. While joinder may be proper under Civ.R. 19(A) and R.C. 2721.12 in actions brought in the court of common pleas, these rules of procedure are inconsistent with R.C. Chapter 2743, and joinder of a nonparty is not permitted in a Court of Claims action. Further, Civ.R. 19(B) provides for determination of the feasibility of joinder by the court hearing the action, in this case, the Court of Claims.

Although it could not be joined as a party in the Court of Claims action here appealed, Walsh, Higgins was not and is not precluded from bringing its own declaratory action in the court of common pleas to have its contract agreements with the university declared valid and enforceable. (Moreover, Walsh, Higgins could likely assert a claim for damages in the Court of Claims if its contracts with appellant are found unenforceable.) Walsh, Higgins's failure to bring its own action is not sufficient reason to sustain appellant's assignment of error.

Therefore, appellant's second assignment of error is overruled.

Appellant's third assignment of error claims that the trial court erred in its determination that appellee Tiemann had standing as a taxpayer to bring suit against appellant. Paragraph one of appellees' complaint describes appellee Robert W. Tiemann as a resident citizen of Hamilton County, Ohio, and a taxpayer of the state of Ohio. It goes on to state that appellee Tiemann "has

standing to bring this suit on behalf of himself and all other taxpayers of the State of Ohio and as a private attorney general."

The Ohio Supreme Court in *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1, held the following regarding the standing of a taxpayer to challenge state expenditure:

" 'Even in the absence of legislation, a taxpayer has a right to call upon a court of equity to interfere to prevent the consummation of a wrong such as occurs when public officers attempt to make an illegal expenditure [debt], which he, in common with other property holders of the taxing district, may otherwise be compelled to pay.'

"It is equally fundamental that at common law and apart from statute, a taxpayer can not bring an action to prevent the carrying out of a public contract or the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are put in jeopardy. In other words, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally." *Id.* at 368, 55 O.O. at 216, 123 N.E.2d at 2, quoting 39 Ohio Jurisprudence (1935) 2, Section 2. See, also, *State ex rel. Barth v. Hamilton Cty. Bd. of Elec.* (1992), 65 Ohio St.3d 219, 222, 602 N.E.2d 1130, 1133.

██ Appellee Tiemann claims standing as a general taxpayer. Although this court has held that a party challenging an expenditure from the state's general revenue fund who proves contribution to that fund as a taxpayer has shown a special interest sufficient to satisfy the requirements of *Masterson*, it expressly noted that it was "[b]ecause there is no special fund involved here as in *Masterson*, but, instead, only the state's general revenue fund to which plaintiff contributed as a taxpayer." *State ex rel. United McGill Corp. v. Hamilton* (1983), 11 Ohio App.3d 102, 11 OBR 155, 463 N.E.2d 405; *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 619 N.E.2d 1145.

This court has also held:

"In order to maintain a taxpayer's action to either enjoin illegal conduct or compel legal conduct two prerequisites must be established. First, the funds involved must have been derived from some type of taxation and, second, if such funds are found to be tax funds, the relator must have a special interest therein." *State ex rel. Snyder v. State Controlling Bd.* (1983), 11 Ohio App.3d 270, 272, 11 OBR 449, 452, 464 N.E.2d 617, 618. See, also, *Control Data Corp. v. Controlling Bd.* (1983), 16 Ohio App.3d 30, 16 OBR 32, 474 N.E.2d 336.

A plaintiff who has "not shown any special interest in the funds used to fund the contract it challenges and has failed to show any damage different from that which would be sustained by the public in general as a result of the project * * *

has failed to meet the test of standing set forth in *Masterson.*" *Ohio Valley Mall Co. v. Wray* (1995), 104 Ohio App.3d 629, 634, 662 N.E.2d 1108, 1111.

Appellee Tiemann claims taxpayer standing to prevent the illegal expenditure of what appellees describe as private funds by the university. In its brief, appellees refer to the fact that the university plans to pay for its construction project out of a "general receipts" fund, which appellees acknowledge contains no state appropriations or state funds received by the university. Appellees further claim that state funding provides only a base against which the general receipts can be generated and pledged to pay for the debt service for the construction project, and that appellant's use of a general receipts fund is a "diversion from the statutory provision conclusively stating that the Project is [to be] financed expressly with 'public funds.'" Appellees' statements are to the effect that appellant is using a nonpublic special fund from which the construction costs are to be paid. It would appear, therefore, that under *Snyder, Control Data,* and *Ohio Valley Mall Co., supra,* appellee Tiemann lacks standing to challenge the expenditure of the general receipts fund.

R.C. 3361.05 provides that "[t]he general assembly shall support the University of Cincinnati by such sums and in such manner as it may provide [public funding], but support may also come from other sources" such as private, nonpublic funding. The term "General Receipts" as defined in appellant's lease agreement and cited as exhibit B in appellees' complaint makes no mention of using public funds as part of the general receipts, but instead appears to refer to the "other sources" provided for in R.C. 3361.05.

As a matter of fact, the lease agreement contains explicit instruction that "[t]here shall also be excluded from the General Receipts: (i) moneys raised by state appropriations and taxation." The general receipts are to be funded by, among other means, "gross fees, deposits, charges, receipts and income from all or any part of the students of the University, however designated; all gross income, revenues and receipts from the operation, ownership, or control of the University Facilities (as defined below); all grants, gifts, donations and pledges and receipts therefrom; and the proceeds of the sale of University obligations, to the extent and as allocated to debt service charges on such obligations."

Appellees have not shown that appellant's general receipts funding comes from public funding. They have not shown that appellee Tiemann has contributed to the general receipts fund in any of the methods described in the lease agreement, or in any other manner, as a taxpayer or otherwise. It appears from the proof offered by appellees that the general receipts fund uses no public funds whatever. Even if the general receipts fund were to be deemed a special fund within the meaning of *Masterson,* appellees have not shown that appellee Tiemann has any special interest in the funds used to fund the contract it challenges. Appellees

have failed to show any damage to appellee Tiemann as a result of appellant's actions that are different from any damage that would be sustained by the public in general as a result of the project. The general receipts fund is a nonpublic, special fund to which appellee has not contributed and in which he has no special interest or stake different from that of the public at large. Further, appellee Tiemann has not alleged any real damage to himself, as a taxpayer or otherwise, as a result of appellant's actions. Appellee Tiemann, therefore, has failed to meet the test for standing set forth in *Masterson*. This court finds that the trial court erred in finding that appellee Tiemann had standing as a taxpayer to bring suit against appellant.

Appellees further suggest that appellee Tiemann had no choice but to bring suit against appellant as a private attorney general, citing as their reasoning a belief that the state's Attorney General will be ineffective in pursuing a complaint against the university or will somehow fail to render appropriate, unbiased service to the people of the state of Ohio in this matter. Appellees' argument is not well taken.

This court has found that the decision to bring suit on behalf of another is a matter "of prosecutorial discretion not subject to the concerns of self-appointed private attorneys general." *State v. Keene* (1986), 33 Ohio App.3d 116, 118, 514 N.E.2d 747.

Further, this court finds that appellee Tiemann had many options available through which he may have sought proper relief other than as a private attorney general. R.C. 4115.032 provides that "any interested party may, bring proceedings under such sections to enforce compliance" with Ohio's Wages and Hours on Public Works Law found in R.C. Chapter 4115. In a similar case, this court found:

"R.C. 4115.071(D) authorizes a suit by the Attorney General to insure that a public authority performs the duties specified in that section. In addition, R.C. 4115.14 provides for a suit by the Attorney General to either prevent the letting of a contract or the performance of an executed contract until the public authority complies with the provisions of R.C. 4115.03 to 4114.16. Finally, to the extent the public authority has violated any provision of R.C. 4115.03 to 4115.16, an interested party may file a complaint with the DIR [Department of Industrial Relations] and request that an investigation be undertaken. If no violation is found or more than sixty days elapses before the DIR has ruled on the merits of the complaint, such interested party is authorized to either appeal the DIR determination or to institute a complaint in the common pleas court in the county in which the violation is alleged to have occurred. If the court determines that a violation has occurred, it has the power to enjoin further violation and afford any

of the relief specified by R.C. 4115.03 to 4115.16." *Robbins Sound, Inc. v. Ohio Univ.* (1990), 70 Ohio App.3d 212, 220–221, 590 N.E.2d 877, 883.

R.C. 153.20 also provides that "[t]he attorney general shall have charge of and direct the proceedings necessary to enforce contracts authorized by sections 153.01 to 153.19, inclusive, of the Revised Code." The Supreme Court of Ohio has held that where there is an available remedy to which plaintiff has not resorted, a court of equity will not exercise jurisdiction until that remedy has been exhausted. *Cuyahoga Falls v. Beck* (1924), 110 Ohio St. 82, 102, 143 N.E. 661, 666. See, also, *Wagner v. Messner* (1940), 136 Ohio St. 514, 515, 17 O.O. 155, 155, 26 N.E.2d 1018, 1019.

This court has held that "a court may not entertain an action for declaratory judgment when the plaintiff has not exhausted" other remedies available to it. *Gourmet Beverage Ctr., Inc. v. Akrouche* (Sept. 21, 1995), Franklin App. No. 95APE03–335, unreported, 1995 WL 559937. See, also, *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 149–150, 586 N.E.2d 80, 82–84. The Supreme Court further held that "[a]n injunction is an extraordinary equitable remedy that is appropriate only when there is no other adequate relief available." *Id.* See, also, *Haig v. Ohio State Bd. of Edn.* (1992), 62 Ohio St.3d 507, 510, 584 N.E.2d 704. Appellees have not shown that such remedies were ineffective or that appellee Tiemann attempted to pursue such remedies through the channels outlined above. This court therefore finds appellees' assertion that appellee Tiemann has need or authority to act as a private attorney general due to bias or ineffectiveness of the Attorney General without merit.

This court finds that appellee Tiemann does not have standing to bring suit against appellant, either as a taxpayer or as a private attorney general. For the foregoing reasons, appellant's third assignment of error is sustained.

 Appellant's fourth assignment of error asserts that the trial court erred in its determination that the remaining three appellees, Fred DeBra Company and two contractor associations (represented by appellee Robert Tiemann), Greater Cincinnati Plumbing Contractors Association, Inc. and Mechanical Contractors Association of Cincinnati, Inc., have standing to bring suit because they have not suffered actual, compensable damages. A plaintiff must bring suit against a defendant consisting of an actual case or controversy. The plaintiff must have standing to bring its suit. An association has standing to bring suit on behalf of its members when "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ohio Academy of Nursing Homes, Inc. v. Barry* (1987), 37 Ohio App.3d 46, 47, 523 N.E.2d 523, 525. Therefore, the associations and contractors may bring a suit on

behalf of themselves or their association members if they have standing to do so. However, merely stating a cause of action upon which relief can be granted does not automatically confer standing upon a plaintiff to bring its suit. The question of standing is whether a litigant is entitled to have a court determine the merits of the issues presented. Standing is a threshold test that, if satisfied, permits the court to go on to decide whether the plaintiff has a good cause of action, and whether the relief sought can or should be granted to plaintiff. *Warth v. Seldin* (1975), 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343, 354; *Baker v. Carr.* (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

The standing doctrine requires that a litigant have a personal stake in the matter he or she seeks to litigate. A plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult * * * questions." *Id.* at 204, 82 S.Ct. at 703, 7 L.Ed.2d at 678. A plaintiff must show the injury to himself caused by the defendant, the injury having a remedy in law or equity. The injury need not be either large or economic, but it must be palpable. *Warth,* 422 U.S. at 498, 95 S.Ct. at 2204–2205, 45 L.Ed.2d at 354. A plaintiff's injury must be injury to himself personally or to a class. Injury that is borne by the population in general and does not affect plaintiff in particular is typically insufficient to confer standing upon the plaintiff to bring suit against a defendant. *Allen v. Wright* (1984), 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556. Finally, plaintiff's injury cannot be merely speculative. A bare allegation that plaintiff fears that some injury will or may occur is insufficient to confer standing. *Los Angeles v. Lyons* (1983), 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675.

In *Ohio Contractors Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 643 N.E.2d 1088, a case in which a contractor's association asked the court to decide the legality of a village's decision to bypass the competitive-bidding and prevailing-wage process on a public project, the Ohio Supreme Court found, while an association may bring an action on behalf of its members, "the association must establish that its members have suffered actual injury." *Id.* at 320, 643 N.E.2d at 1089; *Warth,* 422 U.S. at 511, 95 S.Ct. at 2212–2211, 45 L.Ed.2d at 361–362. The same court found that "[t]o be compensable, the injury must be concrete and not simply abstract or suspected. * * * [W]here no bid was submitted and there was consequently no concrete injury suffered by any private contractor, [the association] does not have the standing to challenge the legality of the village's bidding procedure." *Ohio Contractors Assn.* at 320, 643 N.E.2d at 1090.

Appellees Fred DeBra Company, Greater Cincinnati Plumbing Contractors Association, Inc., and Mechanical Contractors Association of Cincinnati, Inc., have not shown or claimed any actual injury to themselves or to association members that is not or will not be shared by the public generally. Appellees

have not bid on the project and do not allege palpable injury to themselves or their members. Indeed, plaintiffs state in their complaint that they bring suit without damages and seek only declaratory relief. While this court found that appellees' complaint stated damages sufficient to state a cause of action, it finds here that the injury claimed is merely speculative. Appellees have not shown that they were denied any contract due to appellant's actions or that they had or would have bid on the construction project in question. Appellees have not shown that they would have been awarded a contract for the project even if they had bid, and they have not shown any damage or loss, real or speculative, monetary or otherwise, caused by appellant's actions. The *Upjohn* court held:

"The purpose of R.C. 2743.03(A)(2), as applied herein, is to collect related claims before one tribunal. However, we question whether that section intended necessarily to saddle the Court of Claims with claims for declaratory and injunctive relief when (1) those claims may be maintained in the common pleas court, and, in the context of this appeal, (2) no related money damages claim is pending before the Court of Claims. Indeed, such a result seems contrary to the purpose underlying creation of the Court of Claims." *Id.*, 77 Ohio App.3d at 835, 603 N.E.2d at 1095.

The court further held that where the damages claims to which claims for declaratory and injunctive relief are related is dismissed from the action, "the Court of Claims properly may dismiss the claims for declaratory and injunctive relief and allow those claims to proceed in the common pleas court as they could have in the absence of R.C. Chapter 2743 and the Court of Claims." *Id.*

This court finds that appellees Fred DeBra Company, Greater Cincinnati Plumbing Contractors Association, Inc., and Mechanical Contractors Association of Cincinnati, Inc., have no standing to bring suit against appellant, and the other three original plaintiffs, Cincinnati Chapter National Electrical Contractors Association, Inc., Charles Randolph Company, and Village Building Services, Inc., have been dismissed from the action for failure to prosecute their case. For the foregoing reasons, this court sustains appellant's fourth assignment of error.

Appellant's first and second assignments of error are overruled. Appellant's third and fourth assignments of error are sustained and therefore render moot appellant's fifth and sixth assignments of error, and also render moot cross-appellant's first and second assignments of error. The court shall not, therefore, address the remaining issues or the merits of the case. The judgment of the Court of Claims is affirmed in part and reversed in part, and this cause is hereby remanded for disposition in accordance with the law and this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BOWMAN, J., concurs.

LAZARUS, J., concurs in judgment only.

LAZARUS, Judge, concurring in judgment only.

I respectfully disagree with the conclusion of the majority that the complaint contains a claim for money damages. Therefore, I would sustain appellant's first assignment of error and dismiss the complaint for lack of subject-matter jurisdiction and not address the remaining assignments of error.

The majority correctly states that if the action is one for money damages against the state coupled with a request for declaratory and injunctive relief, the appropriate forum is the Court of Claims. *Racing Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 320, 28 OBR 386, 388, 503 N.E.2d 1025, 1028–1029; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.* (1991), 62 Ohio St.3d 97, 103, 579 N.E.2d 695, 699; *Ohio Edison Co. v. Ohio Dept. of Transp.* (1993), 86 Ohio App.3d 189, 193, 620 N.E.2d 217, 220; *Upjohn v. Ohio Dept. of Human Serv.* (1991), 77 Ohio App.3d 827, 603 N.E.2d 1089; R.C. 2743.03(A)(2). Contrary to the majority's position, however, I read the complaint to specifically disavow any claim for money damages.

The complaint is captioned "Complaint for Declaratory Judgment and Preliminary and Permanent Injunction." In their prayer for relief, appellees request a preliminary and permanent injunction, a declaratory judgment, an order requiring that the defendant comply with enumerated provisions of the Ohio Revised Code if and when it proceeds with construction, costs and attorney fees, and "any further relief to which the Plaintiffs may be entitled."

An injunction cannot be issued when there is an adequate remedy at law such as money damages. *Leaseway Distrib. Centers, Inc. v. Dept. of Adm. Servs.* (1988), 49 Ohio App.3d 99, 106–107, 550 N.E.2d 955, 963–964. In paragraphs 57 and 60 of the complaint, appellees merely pleaded that because their damage is incapable of calculation, they lack an adequate remedy at law and injunctive relief is therefore appropriate. The mere statement that the alleged damage is not possible to calculate does not transform the claim to one for money damages. Accordingly, I concur in judgment only.