Defendants-appellants, Judith Chamberlain, Sheryl Swigert and Janice Fletcher, appeal the decision of the Madison County Court of Common Pleas awarding veterinary fees and boarding costs to plaintiffs-appellees, Humane Society of Madison County, Sharon Thompson, Carolyn Smith, Mary Ann Bunner, Becky Mills, Janice Fehn, Dr. Basil Bisca and Ray Lay.[1]
We affirm the decision of the trial court.
Judith Chamberlain owned a dog kennel in Mt. Sterling, Ohio known as Judulu Kennels. She operated the kennel primarily for breeding dogs. She kept over one hundred dogs on the premises.
Chamberlain's kennel became the subject of investigation when the Madison County Sheriff's Office received complaints about the conditions there. Sergeant Doug Crabbe visited the kennel and observed that the kennel was overcrowded, hot, and poorly ventilated. Many of the dogs were soiled with feces. Much of their food and water was dirty. Chamberlain was advised to clean the kennel, reduce the number of dogs and provide additional ventilation.
Nearly one year later, Carol Murphy visited the kennel with a friend who apparently boarded some of her dogs there. Murphy observed two "rabbit hutches" filled with dogs. She counted at least eight dogs in one of the hutches. There were dogs with severely matted fur and others that seemed to have "bad" eyes. Murphy saw dogs covered with feces and dogs that appeared to be sick or injured. The water bowls were dirty. Some of the water bowls were contaminated with feces. Murphy reported her observations to the sheriff's office.
As a result of Hill's complaint and prior reports regarding the conditions at the kennel, Sgt. Crabbe obtained a warrant to search the kennel and seize any evidence of cruelty to animals. When he executed the search warrant, Sgt. Crabbe found the kennel to be overcrowded, hot, and malodorous. The dogs' cages were littered with fresh and decaying feces. Fur and feces were stuck to the sides of some of the cages. Many dogs had moldy food and dirty water. Cages were often stacked on each other, allowing urine and feces to fall through the cages and onto the dogs beneath them. Sgt. Crabbe observed dogs that appeared to be injured and sick. In his estimation, there were over one hundred fifty dogs housed at the kennel. The Humane Society of Madison County ("Humane Society") removed seventeen dogs from the premises so that they could receive immediate medical attention.
Several days later pursuant to a court order, the dog warden removed the remaining dogs from the kennel with the assistance of the Humane Society. They seized a total of one hundred twenty-two dogs. The Humane Society euthanized seventeen dogs because of their illnesses or injuries. The Humane Society catalogued the dogs, noting each dog's gender, breed, color and medical condition.
Elizabeth A. Dible, D.V.M., examined the dogs removed from the kennel. Many of the dogs suffered from a variety of maladies including parasite infestation, overgrown nails, infected ears, dry eye syndrome, uterine infections, broken and malformed jaws, canine dental disease, matted fur, bacterial infections and mange. Dr. Dible opined that most of the conditions she observed in the dogs were preventable or treatable. Dr. Dible noted that the conditions she observed in the dogs existed while they were at the kennel and there was little evidence that the dogs received any regular veterinary care or treatment for their ailments.
Chamberlain was charged with eleven counts of cruelty to animals. While the criminal trial was pending, the court ordered the Humane Society, at the request of Chamberlain and others asserting rights to the dogs, not to euthanize, spay or neuter any dog without the court's approval. The court order banned the adoption of any of the dogs.
The Humane Society did not have the capacity to shelter such a large number of dogs, and the number was growing due to the birth of puppies. Volunteers and rescue groups assisted by providing food, shelter, grooming and necessary veterinary care while Chamberlain's criminal trial was pending. Appellees are those volunteers, rescue groups and the Humane Society.
A jury convicted Chamberlain on eight counts of cruelty to animals. The court sentenced Chamberlain accordingly and ordered her to forfeit the animals seized from the kennel to the Humane Society "to be either sold or placed." This court affirmed Chamberlain's convictions and sentences. See State v. Chamberlain (Jan. 31, 2000), Madison App. No. CA99-01-003, unreported, discretionary appeal not allowed,89 Ohio St.3d 1408.
After months of providing temporary care to the dogs, appellees were finally able to find homes for the dogs. Appellees sued Chamberlain to recover the expenses they incurred while caring for the dogs that Chamberlain negligently maintained and mistreated. Appellees also sued Sheryl Swigert and Janice Fletcher because they asserted an ownership interest in a small number of the dogs.
The trial court determined that Chamberlain inhumanely treated the dogs seized from the kennel. The trial court found that Swigert owned eleven of the dogs and Fletcher owned four of the dogs, and concluded that Swigert and Fletcher had actual knowledge of the conditions of the kennel and allowed their dogs to be treated inhumanely by Chamberlain. Appellees were awarded the veterinary fees and boarding costs they incurred while caring for the dogs. The trial court awarded appellees $110,464.54 from Chamberlain, $7,977.97 from Swigert and $4,295.83 from Fletcher.
Appellants appeal the judgment of the trial court and raise nine assignments of error. For purposes of clarity, some of the assignments of error will be addressed out of order.
Assignment of Error No. 1:
 THE PLAINTIFFS LACKED STANDING TO ASSERT A LIEN UNDER O.R.C. § 1311.48 FOR KENNEL EXPENSES, VETERINARY EXPENSES AND OTHER EXPENSES FOR SEIZED DOGS.
Assignment of Error No. 2:
 THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT DEFENDANTS SHERYL SWIGERT AND JANIE FLETCHER WERE LIABLE FOR ANY AMOUNT OF DAMAGES TO THE PLAINTIFFS.
Assignment of Error No. 3:
 THE TRIAL COURT ERRONEOUSLY FAILED TO CONSIDER DEFENDANTS' COUNTERCLAIM BY ASSERTING THAT DEFENDANTS' COUNTERCLAIM WAS PRECLUDED BY THE ORDER OF CRIMINAL FORFEITURE, WHICH WERE [sic] ON APPEAL AT THE TIME OF THE CIVIL TRIAL.
Assignment of Error No. 4:
 THE TRIAL COURT ABUSED ITS DISCRETION BY ITS DISPLAY OF OPEN AND OBVIOUS BIAS FOR THE PLAINTIFFS BY ASKING LEADING, FOUNDATION QUESTIONS [sic] TO ESTABLISH PLAINTIFFS' CLAIM FOR REASONABLE AND NECESSARY EXPENSES FOR CARE OF SEIZED ANIMALS.
Assignment of Error No. 5:
 THE TRIAL COURT ERRONEOUSLY FAILED TO CONSIDER SET-OFFS OF THE DEFENDANTS' [sic] FOR THE REASONABLE VALUE OF THE ANIMALS AND FOR SALE PRICE OF ANIMALS RECEIVED BY VARIOUS RESCUE ORGANIZATIONS.
Assignment of Error No. 6:
 THE TRIAL COURT ERRONEOUSLY TOOK THE UNREASONABLE EXPENSES FOR THE CARE-TAKING OF THE ANIMALS AS REASONABLE AND NECESSARY, DESPITE HAVING INSUFFICIENT EVIDENCE TO ESTABLISH THE REASONABLE AND NECESSARY KENNEL AND MEDICAL EXPENSES.
Assignment of Error No. 7:
 THE TRIAL COURT ERRONEOUSLY PERMITTED NON-VETERINARY WITNESSES TO TESTIFY REGARDING VETERINARY CONDITIONS TO THE MATERIAL PREJUDICE OF THE DEFENDANTS.
Assignment of Error No. 8:
 THE TRIAL COURT ERRONEOUSLY ADMITTED ALLEGED "BUSINESS RECORDS" OF THE MADISON COUTNY [sic] HUMANE SOCIETY EVEN THOUGH DOCTOR DIBLE WAS NOT THE RECORDS CUSTODIAN OF THE MADISON COUNTY HUMAN SOCIETY NOR WERE SUCH "BUSINESS RECORDS" PROPERLY AUTHENTICATED OR ADMITTED.
Assignment of Error No. 9:
 THE PROVISIONS OF O.R.C. § 1717.13 ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED, IN CONTRAVENTION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND IN CONTRAVENTION OF ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.
In their first assignment of error, appellants maintain that appellees lacked standing to bring an action to recover the expenses they incurred providing care to the dogs. Specifically, appellants argue that appellees do not have standing to "assert a lien" against them under R.C. 1311.48
or R.C. 1717.13.
The question of standing depends upon whether the plaintiff "has alleged such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." State ex rel. Dallman v. Franklin Cty. Court ofCommon Pleas (1973), 35 Ohio St.2d 176, 178-79, quoting Sierra Club v.Morton (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 1364. A personal stake in the outcome of a controversy exists where the plaintiff shows that the defendant has caused a palpable injury to him for which there is a remedy in law or equity. Tiemann v. Univ. of Cincinnati (1998),127 Ohio App.3d 312, 325.
"Standing is a threshold test that, if satisfied, permits the court to go on to decide whether the plaintiff has a good cause of action, and whether the relief sought can or should be granted to plaintiff."Tiemann at 325. Thus, the question of standing decides only whether a party is entitled to have the court decide the merits of the case, not whether the party will succeed on the merits of the case. See id; Warthv. Seldin (1975), 422 U.S. 490, 498, 95 S.Ct. 2197, 2204-2205.
Appellees each incurred substantial expenses providing food, shelter and veterinary care to dogs owned by appellants. Appellees cared for the dogs because appellants allegedly neglected to provide adequate food, water or attention to the dogs. Appellees claimed that appellants' negligence caused them damages they were entitled to recover. Appellees acquired the dogs as a result of a court-ordered seizure and asserted a possessory lien. Appellees also sought monetary damages under the statutory provisions of R.C. 1311.48 and R.C. 1717.13 and common law theories of negligence, unjust enrichment, and quantum meruit. Appellees sufficiently demonstrated a palpable interest in the outcome of the case to meet the threshold test of standing. Accordingly, appellants' first assignment of error is overruled.
In their fourth assignment of error, appellants accuse the trial judge of "open and obvious bias." Appellants argue that the trial judge's bias is obvious because he asked leading foundational questions that assisted appellees in establishing their claims.
The Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution. R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas court judge is biased and prejudiced. State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, paragraph three of the syllabus; Jones v. Billingham (1995),105 Ohio App.3d 8. A litigant who believes that the trial judge should be disqualified must file an affidavit of bias or prejudice with the clerk of the supreme court pursuant to R.C. 2701.03. Id. Since only the Chief Justice or his designee may hear a disqualification matter, a court of appeals is without authority to void the judgment of a trial court because of bias or prejudice of the judge. Beer v. Griffith (1978),54 Ohio St.2d 440, 441-42. Appellants' exclusive remedy if they believed that the trial judge was biased or prejudiced against them at any stage of the trial was to file an affidavit of disqualification pursuant to R.C. 2701.03. We are without jurisdiction to decide the merits of appellant's fourth assignment of error. Appellant's fourth assignment of error is, therefore, overruled.
Appellants Swigert and Fletcher argue in the second assignment of error that "there was insufficient evidence to establish" that they were liable for any damages to appellees. Appellants Swigert and Fletcher maintain that appellees have no cause of action against them. They attempt to distinguish themselves from appellant Chamberlain because they were never charged with or convicted of cruelty to animals.
"Sufficiency of evidence" is a term of art that tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. See, e.g., State v. Thompkins (1997),78 Ohio St.3d 380, 386; Black's Law Dictionary (6 Ed. 1990). A party may challenge the sufficiency of evidence in a civil case by moving the trial court for a directed verdict pursuant to Civ.R. 50. A motion for a directed verdict tests "the legal sufficiency of the evidence to take the case to the jury." Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119.
Appellants did not challenge the sufficiency of evidence at trial pursuant to Civ.R. 50. The trial in this case was one to the bench, not to a jury, therefore there was no verdict to direct and a motion for a directed verdict pursuant to Civ.R. 50(A) would have been improper.[2]
Rather, it appears that appellants Swigert and Fletcher are inartfully attempting to challenge the judgment against them as against the manifest weight of the evidence.
A reviewing court will not reverse a judgment as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. C.E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, syllabus. Evaluating evidence and assessing its credibility are the primary functions of the trier of fact, not the appellate court. Yuhaszv. Mrdenovich (1992), 82 Ohio App.3d 490, 492. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, an appellate court must not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.Id. If the evidence is susceptible to more than one interpretation, the appellate court must interpret it consistently with the judgment of the trial court. Id.
The trial court determined that appellees could recover damages from Swigert and Fletcher pursuant to R.C. 1717.13, which states in relevant part:
 When, in order to protect any animal from neglect, it is necessary to take possession of it, any person may do so. When an animal is impounded or confined, and continues without necessary food, water, or proper attention for more than fifteen successive hours, any person may, as often as is necessary, enter any place in which the animal is impounded or confined and supply it with necessary food, water, and attention, so long as it remains there, or, if necessary or convenient, he may remove such animal; and he shall not be liable to an action for such entry. In all cases the owner or custodian of such animal, if known to such person, immediately shall be notified by him of such action.
 The necessary expenses for food and attention given to an animal under this section may be collected from the owner of such animal, and the animal shall not be exempt from levy and sale upon execution issued upon a judgment for such expenses.
 To recover necessary expenses under R.C. 1717.13, a party must show that he provided food and attention to an animal owned by another in order to protect the animal from neglect. The term "any person" extends to individuals, rescue organizations and county humane societies. See State v. York (1997), 122 Ohio App.3d 226, 234-35; Moskoff v. City of Akron (May 4, 1994), Summit App. No. 16464, unreported.
The Humane Society, with the assistance of the Dog Warden and pursuant to a court order, seized all of the dogs from Chamberlain's kennel in order to protect the animals. Swigert asserted ownership to eleven of the seized dogs. Fletcher claimed ownership of four dogs. Both permitted their dogs to remain at Chamberlain's kennel. Both even stated that they treated their dogs as well as Chamberlain, who was convicted of eight counts of cruelty to animals as a result of the conditions at the kennel.
There is overwhelming evidence in the record that the dogs at the kennel were neglected. Carol Murphy and Sgt. Crabbe both testified about the deplorable conditions they witnessed at the kennel. They described the kennel as overcrowded and malodorous. There were feces in the water bowls, stuck to the dogs and decaying in the cages. Many dogs had dirty food and water. Dogs appeared to be sick and injured. Dr. Dible testified regarding her examination of the dogs after they were seized from the kennel and recalled the variety of maladies from which many of the dogs suffered. In her expert opinion as a veterinarian, Dr. Dible opined that ninety-nine percent of the conditions she observed in the dogs were preventable or treatable. The conditions she observed in the dogs existed while they were at the kennel and there was little evidence that the dogs received any regular veterinary care or treatment for their ailments.
Appellees each provided separate accounts of the dogs for which they provided care while Chamberlain's criminal trial was pending. Each described the pitiful state in which they found the dogs and the care that the dogs required.
Therefore, there was competent, credible evidence that the dogs were neglected, that appellees provided care to the dogs, and that Swigert and Fletcher owned some of the dogs. The trial court's judgment against Swigert and Fletcher under R.C. 171.13 was not against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.
In their fifth assignment of error appellants argue that the trial court erred by not considering setoffs for the reasonable value of the animals and for the sale prices of the animals received by appellees.
Appellants provide no specific citation to the record indicating any evidence regarding the "sale" of any of the animals. Instead, appellants cite to the record where there was testimony that one of the dogs gave birth to puppies. Appellants also cite to a range of one-hundred nine pages in the record, most of which comprises the testimony of Dr. Dible.
An appellant must indicate to the appellate court specifically where the trial court's alleged errors may be located in the transcript. SeeState v. Miller (1988), 56 Ohio App.3d 130, 131; App.R. 16(A). It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. State v.Watson (1998), 126 Ohio App.3d 316, 321. An appellate court may disregard an assignment of error if a party fails to identify in the record the error on which the assignment of error is based. App.R. 12(A)(2); see, also, Watson at 321.
Nonetheless, our review of the records fails to disclose any evidence that the dogs were sold. There is no evidence that any of the appellees received any monetary compensation for the any "sale" of the dogs. Nor is there evidence that the neglected dogs had any monetary value. Rather, there is ample evidence that appellees incurred substantial expenses caring for over one hundred dogs neglected by appellants until they were able to find new homes for the dogs. Since there appears to be no evidence that any of the seized dogs were ever sold, and appellants have failed to indicate where in the record, if anywhere, such evidence exists, the trial court did not err by failing to set off the damages award. Appellants' fifth assignment of error is overruled.
In their sixth assignment of error, appellants challenge the trial court's calculation of damages. Appellants allege that the trial court erred by accepting the testimony of appellants as "sufficient evidence" that their expenses were "reasonable and necessary." Appellants maintain that the trial court should have consulted the provisions of R.C. 955.17
and a case involving the care of cattle for guidance to determine a perdiem cost to feed and provide care for dogs.
An appellate court must not disturb a damage award if it is supported by competent credible evidence. Arrow Concrete Co. v. Sheppard (1994),96 Ohio App.3d 747; Baum v. Augenstein (1983), 10 Ohio App.3d 106. In reviewing a damages award, an appellate court must not reweigh or assess the credibility of the evidence. Bemmes v. Public Emp. Retirement Bd.
(1995), 102 Ohio App.3d 782, 788; Yuhasz, 82 Ohio App.3d at 492. Where damages are established, the evidence need only tend to show the basis for the computation of damages to a fair degree of probability. Brewerv. Brothers (1992), 82 Ohio App.3d 148, 154.
R.C. 1713.13 permits a person to collect from an animal's owner "the necessary expenses for food and attention" to protect that animal from neglect. All appellees testified about their expenses for providing veterinary care, food, boarding, grooming and other "attention" to the neglected dogs. Appellees recounted the deplorable conditions of the dogs when they began caring for them. Dr. Dible summarized the expenses incurred by the Humane Society. Appellants provided no evidence to rebut appellees' testimony regarding their expenses. Nor did appellants introduce any evidence regarding average "reasonable" costs to care for neglected dogs. Therefore, there was competent, credible evidence in the record from which the trial court could award damages to appellees.
Appellants' reliance on R.C. 955.17 is misplaced. R.C. 955.17 provides a schedule of costs that a county may recover against an owner, keeper or harborer of animal seized and impounded by a county dog warden. While a dog warden may impound all animals running at large, a humane society or individuals may seize only those animals that are neglected. See 1986 Ohio Attny.Gen.Ops. No. 998 at 243. R.C. 1717.13 provides the authority for a humane society or other person to take possession of an animal to protect it from neglect, and recover from the animal's owner the necessary expenses for food and attention. Appellees took possession of appellants' dogs to protect them from neglect pursuant to R.C. 1717.13. Appellees are not dog wardens for Madison County. The schedule in R.C.955.17 has no relevance to them.
Appellants also argue that Campbell v. Rach (Mar. 26, 1993), Highland App. No. 808, unreported, a case involving cattle boarding, demonstrates "the egregious abuse of discretion perpetrated upon [them] by the trial court." Appellants' argument is premised on the fact that the trial court in Campbell upheld a damage award of $3.66 a day for the care of cattle. Appellants argue that appellees' damage claims to feed and care for dogs are "outrageous" in comparison.
Campbell, however, does not support appellants' position. Appellants' attempt to compare the costs of pasturing cattle with those of caring for neglected house dogs is based on mere speculation. Further, the damage award of $3.66 per day in Campbell was based upon an implied or oral contract for the care of livestock and was not brought under R.C. 1717.13.Campbell v. Rach (Mar. 26, 1993), 1993 WL 97629 at *2, Highland App. No. 808, unreported. Most importantly, the court upheld the trial court's award because the plaintiff testified that his expenses totaled $3.66 a day and the award, as in this case, was supported by competent, credible evidence. See id. at *3. Appellants' sixth assignment of error is overruled.
In their seventh assignment of error, appellants argue that the trial court erred by permitting appellees to provide inadmissible opinion testimony about the "alleged veterinary conditions and the reasonable boarding expensing necessary for the dogs." First, appellants allege in a broad-sweeping generalization, without specific citations to the record, that the trial court "repeatedly permitted non-expert witnesses to opine regarding their opinions [sic] of the veterinary conditions of the various seized animals." The only specifically identified testimony challenged by appellants is Sgt. Crabbe's testimony that one or two of the dogs "appeared" to have "broken jaws" that "were hanging down." Second, appellants maintain that the trial court erred by allowing appellees to give "lay opinions" about the "standard reasonable amount" for housing and feeding the dogs in their possession.
It appears appellants did not object to these statements at trial. As a result, appellants waived all but plain error in the admission of the evidence. See State v. Nicholas (1993), 66 Ohio St.3d 431, 435-36;Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. In a civil case, a reviewing court must limit the plain error doctrine to those exceptional circumstances where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."Goldfuss at syllabus. None of the testimony of which appellants complain rises to the level of plain error.
Sgt. Crabbe only testified that one or two dogs "appeared" to have broken jaws because their jaws were hanging down. Sgt. Crabbe was testifying from his personal observations and was not providing expert testimony about the medical condition of the dogs. Moreover, Dr. Dible later provided detailed expert testimony about the medical conditions of the dogs.
Appellees' testimony regarding the expenses incurred in providing food, veterinary care and other attention to the dogs was not opinion testimony. They were not testifying as the reasonableness of their expenses or to establish a "standard" daily rate for the computation of their damages. Appellees simply testified about their own individual expenses for proving daily care and other necessary attention to the dogs.
Appellants' assignment of error is disregarded to the extent that appellants planned to challenge other alleged evidentiary errors, but failed to specifically identify them in the record. See App.R. 12(A)(2);State v. Watson (1998), 126 Ohio App.3d 316, 321. The seventh assignment of error is overruled.
In their eighth assignment of error, appellants challenge the trial court's decision to admit the "business records" of the Humane Society through Dr. Dible. Appellants maintain that the trial court erroneously "transformed" Dr. Dible into the "Designated Representative" of the Humane Society when she, in fact, admitted that she was only a volunteer.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129, 483 N.E.2d 1157, certiorari denied (1986), 474 U.S. 1073,106 S.Ct. 837, 88 L.Ed.2d 808. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Rivera (1994),99 Ohio App.3d 325, 328.
It appears that appellants challenge the admission into evidence the expense records of the Humane Society pertaining to the seized dogs because the records were not prepared by Dr. Dible and consisted of invoices from outside agencies. Basically, appellants allege that the records are inadmissible hearsay.
Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted, Evid.R. 801(C), and as such is generally not admissible. Evid.R. 802. However, Evid.R. 803(6) provides an exception to the hearsay rule when the evidence is a record of regularly conducted business activity. This rule states:
 A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
 Evid.R. 803(6). A trial court's decision whether to admit business records under Evid.R. 803(6) is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. National City Bank v. Fleming (1981), Ohio App.3d 50, 56.
Dr. Dible testified that the treasurer of the Humane Society prepared the expense records and they were prepared in the ordinary course of business. Dr. Dible was in charge of the care and treatment of the animals rescued from Chamberlain's kennel. She instructed staff persons at the Humane Society to order certain veterinary supplies and she ordered veterinary care for some of the animals at an animal hospital where she worked full time. The Humane Society was invoiced for the supplies and veterinary care. Dr. Dible testified in detail regarding the treatment for the dogs and the records that she kept cataloguing their treatment.
Dr. Dible properly authenticated the Humane Society's records and the trial court did not abuse its discretion in admitting them. Accordingly, appellants' eighth assignment of error is overruled.
In their ninth assignment of error, appellants allege that R.C. 1717.13
is unconstitutional on its face and as applied. Appellants argue that R.C. 1717.13 unconstitutionally permits a person to gain entry upon another person's land and conduct a warrantless search of the premises and seizure of property. Appellants' argument fails for two reasons.
First, appellants did not raise the issue of the constitutionality of R.C. 1717.13 before the trial court and attempt to raise this issue for the first time in this appeal. It is axiomatic that a party cannot raise new issues or legal theories for the first time on appeal. See, e.g.,Stores Realty v. Cleveland (1975), 41 Ohio St.2d 41, 43; Chandler andAssoc., Inc. v. America's Healthcare Alliance, Inc. (1997),125 Ohio App.3d 572, 582. Failure to raise at the trial court level the issue of the constitutionality of a statute or its application constitutes a waiver of the issue. Barnhart v. Sonny Emrick Excavating
(Jan. 12, 1998), Fayette App. No. CA97-03-008, unreported.
Second, Sgt. Crabbe searched Chamberlain's kennel pursuant to a valid search warrant and seized seventeen animals in accordance with the warrant. Later, pursuant to a court order, the dog warden, with the assistance of the Humane Society, removed the remaining dogs from the kennel. Since the dogs were initially seized pursuant to a search warrant and a court order, appellants' constitutional argument appears wholly inapplicable to this case. Accordingly, the ninth assignment of error is overruled.
Appellants' third assignment of error claims that the trial court engaged in "abusive practices" because it did not properly consider their counterclaim against appellees for conversion. In a self-contradictory argument, appellants claim that the trial court both failed to rule on their proffered evidence regarding their counterclaim and precluded them from offering evidence on their counterclaim in the first place. Appellants' argument is without merit.
It appears from the record that appellants never offered any evidence in support of their conversion claim. Although the trial court expressed doubt that appellants could offer any relevant evidence on a claim of conversion, the trial court expressly indicated to appellants that they could make a proffer of evidence.
The Madison County Sheriff's office seized the first seventeen dogs pursuant to a valid search warrant. The dog warden removed the remaining dogs from the kennel with the assistance of the Humane Society pursuant to a court order. Government actions performed in accordance with a court order are cloaked with judicial immunity. Kelly v. Whiting
(1985), 17 Ohio St.3d at 93-94; Wholesale Electric Supply v. Robusky
(1970), 22 Ohio St.2d 181, syllabus. Since the dogs were seized pursuant to a valid search warrant and a court order, the parties involved in that initial seizure are immune from liability.
The trial court specifically acknowledged appellants' counterclaim in its written decision and entry. Although the trial court did not expressly reject appellants' claim, the trial court's judgment for appellees implicitly precluded appellants' counterclaim of conversion. R.C. 1717.13 provides immunity against actions for trespass and conversion for taking possession of animals adjudicated as neglected.State v. York (1997), 122 Ohio App.3d 226, 234; Zageris v. City ofWhitehall (Dec. 29, 1992), Franklin App. No. 92AP-388, unreported. The trial court concluded that appellees were entitled to recover their necessary expenses for providing food and attention to the dogs rescued from the kennel under R.C. 1717.13 because the dogs were treated inhumanely and neglected by appellants. Therefore, appellees were immune from appellants' claim of conversion. The third assignment of error is overruled.
 ______________________ POWELL, P.J.
YOUNG and WALSH, JJ., concur.
[1] The trial court's judgment from which this appeal is taken does not award any damages to plaintiff-appellee, Pauline Lay.
[2] A motion for a directed verdict applies only to cases tried before a jury as the term "verdict" implies. Freeman v. Wilkinson (1992),65 Ohio St.3d 307, 309. In a bench trial, a motion by a defendant at the close of the plaintiff's evidence is one for dismissal pursuant to Civ.R. 41(B)(2). See Johnson v. Tansky Sawmill Toyota, Inc. (1994),95 Ohio App.3d 164, 167. The distinction is critical because in a bench trial the trial court is the trier of fact and weighs the evidence under Civ.R. 41(B)(2); in a jury trial, the court is not the trier of fact and does not weigh the evidence under Civ.R. 50(A)(4). Id.