STURT et al., Appellees and Cross–Appellants,

v.

GRANGE MUTUAL CASUALTY COMPANY, Appellant and Cross–Appellee.

[Cite as *Sturt v. Grange Mut. Cas. Co.* (2001), 145 Ohio App.3d 70.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–00–1353.

Decided Aug. 3, 2001.

*Steven Timonere* and *Kevin A. Pituch,* for appellees and cross-appellants.

*Raymond H. Pittman III* and *Jill A. May,* for appellant and cross-appellee.

THOMAS F. BRYANT, Judge.

Defendant-appellant Grange Mutual Casualty Co. ("Grange") brings this appeal from the judgment of the Court of Common Pleas of Lucas County in favor of plaintiff-appellee Donald B. and Ruth A. Sturt ("the Sturts").

On October 15, 1993, the Sturts sold their condominium to Sheila Buell ("Buell"). Buell and her two daughters, Tracie and Leslie, moved into the condominium. On October 25, 1993, Steven Whitner ("Whitner"), a resident of the adjoining condominium, entered the condominium by breaking through a common attic wall between the units and masturbated on Buell while she slept. Whitner was caught looking into Leslie's bedroom on May 29, 1994. On February 13, 1997, Whitner again entered the condominium through the attic and sexually assaulted Buell.

On October 14, 1997, Buell filed a complaint against the Sturts, among others, alleging that the Sturts had fraudulently represented or negligently represented that a firewall separated the units. Buell claimed that this representation caused her to purchase the unit and she was injured as a result of the false representation. Buell claimed that she suffered mental anguish, humiliation, emotional distress, shock, and post-traumatic stress as part of her damages. All of the claims against the Sturts arose from the sale of the condominium to Buell.

During the action, the Sturts filed a declaratory judgment action against Grange, asking the trial court to find that Grange had a duty to defend and indemnify them in the Buell litigation. On February 1, 2000, the trial court granted the Sturts partial summary judgment, finding that Grange had a duty to defend the Sturts in the Buell litigation.[1] The Buell litigation was settled in May 2000. On July 18, 2000, the Sturts filed a motion for attorney fees and expenses against Grange. The trial court granted fees and expenses for the Buell litigation but denied fees for the declaratory judgment action. It is from these judgments that Grange appeals.

Grange raises the following assignments of error:

"The trial court erred in denying Grange's motion for summary judgment and in granting the Sturts' motion for partial summary judgment thereby determining that Grange owed appellees a duty to defend them in [the *Buell* litigation].

"In the alternative, the trial court erred in its calculation of the amount of attorneys' fees and expenses it awarded to the Sturts as a result of Grange's failure to defend them in [the *Buell* litigation]."

In its answer, the Sturts raised the following assignments of error on cross-appeal:

"The trial court erred in permitting R.C. 2721.16 to be retroactively applied in violation of Art. II, § 28 of the Ohio Constitution.

"Assuming [that] R.C. 2721.16 may be retroactively applied, the trial court erred in failing to award attorney fees and expenses incurred prior to the effective date of R.C. 2721.16."

In the first assignment of error, Grange argues that the trial court should have found that it had no duty to defend the Sturts in the Buell litigation.

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a

---

1. The issue of indemnification was not decided at that time and was later made moot by the settlement of the Buell litigation.

theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 585–586, 635 N.E.2d 19, 23, citing *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555.

The Grange policies [2] contain the following provisions:

"Definitions

"* * *

"4. 'Bodily Injury' means bodily harm, sickness or disease. This includes resulting death, shock, mental anguish, mental injury, or any care or loss of services from any of these at any time.

"* * *

"8. 'Loss' means:

"a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in Bodily Injury or Property Damage during the policy period;

"b. an offense, including a series of related offenses, committed during the policy period that results in Personal Injury.

"* * *

"11. 'Personal Injury' means injury, other than Bodily Injury, arising out of one or more of the following offenses:

"* * *

"c. invasion of the right of private occupancy, wrongful eviction or wrongful entry.

"* * *

"Exclusions

"We do not provide coverage:

"1. For Bodily Injury or Property Damage either expected or intended from the standpoint of any Insured.

"* * *

"13. For any loss arising out of sexual molestation or any sexual activity, corporal punishment or physical or mental abuse." Umbrella Policy, Exhibit F.

---

**2.** There are two policies. The first policy is the homeowner's policy. There is also an umbrella policy which provides similar coverage.

Both the umbrella policy and the underlying homeowner's policy provide basic personal liability coverage, including the duty to defend for claims covered by the policy.

In this case, the Buell complaint alleged bodily injury, as defined by the insurance policy. The basis for these complaints was either the fraudulent representation of the conditions of the wall or the negligent misrepresentation of the structure. The policy provides that Grange will pay to defend claims the insured is legally obligated to pay as damages for bodily injury. The negligence pled in the complaint could possibly be construed as being covered by the insurance policies. Grange admits in its brief that if there is a duty on the part of the insurer to defend on any claim, then it must defend against all claims contained in the complaint. Thus, the Sturts would be entitled to have Grange provide a defense to all of the claims.

Grange next claims that it has no duty to defend because the underlying event is excluded from coverage. The policy at issue does exclude coverage for bodily injury arising from sexual molestation. However, the Sturts are not the ones who committed the sexual molestation, nor were they being sued for the molestation. It also cannot be said that the Sturts intended the sexual molestation of Buell and her daughters in any way. The basis for the complaint against the Sturts is the misrepresentation about the wall and the failure to notify Buell that a sexual deviant sometimes resided next door. Thus, the exclusion for sexual molestation does not apply. The first assignment of error is overruled.

In the second assignment of error, Grange argues that the trial court miscalculated the amount of attorney fees. The basis of this argument is that the trial court awarded attorney fees to the Sturts' attorney for work done after Grange had hired counsel to defend the Sturts. However, the Sturts claim that Grange's counsel requested that the original attorney remain on the case, as he had been working on the case since the complaint was filed and only three months remained until trial. The trial court determined that the attorney was working at the request of the insurance company and awarded fees to the Sturts for this work. This finding is supported by Grange's own argument that this attorney was necessary to protect the Sturts' interests because the attorney appointed by Grange was working to protect Grange's interests. Since the two parties have differing interests, having two independent attorneys working together for the common interests, but separately for the separate interests is appropriate.[3] Thus, the trial court's finding is not unreasonable and the second assignment of error is overruled.

---

3. We note that to accept Grange's argument would be to create a potential violation of DR 5–107. Grange had a duty to defend the Sturts on all claims. Thus, if the appointed attorney

■ On cross-appeal, the Sturts argue that they are entitled to recover the costs of the declaratory judgment action. R.C. 2721.16 states:

"(A) A court of record shall not award attorney's fees to any party on a claim for declaratory relief under this chapter unless a section of the Revised Code explicitly authorizes a court of record to award attorney's fees on a claim for declaratory relief under this chapter or unless an award of attorney's fees is authorized by [R.C. 2323.51], by the Civil Rules, or by an award of punitive or exemplary damages against the party ordered to pay attorney's fees. * * *

"(B) Consistent with [R.C. 2721.13], the provisions of this section are remedial in nature. Notwithstanding any provision of the Revised Code in existence on the day immediately prior to the effective date of this section, notwithstanding any judicial construction prior to the effective date of this section of a statutory provision of that nature, notwithstanding the holding in any decision of a court of this state that authorized an award of attorney's fees to a party to a civil action or proceeding based on common law grounds rather than a statutory authorization of the general assembly, regardless of the date upon which a cause of action accrued that pertains to an action or proceeding in which declaratory relief is sought under this chapter, and regardless of who is the plaintiff or the defendant in an action or proceeding in which declaratory relief is sought under this chapter, division (A) of this section shall apply in connection with both of the following:

"* * *

"(2) An action or proceeding that was commenced prior to the effective date of this section, * * * and that seeks declaratory relief under this chapter."

The effective date of this statute was September 24, 1999. The Sturts argue that the retroactive application of this statute is unconstitutional.

"The test for unconstitutional retroactivity requires the court to determine first whether the General Assembly expressly intended the statute to apply retroactively. * * * If so, the court moves on to the question of whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28, 33.

Here, the language of the statute shows a clear intent that it be applied retroactively. This then leads us to the question of whether it is remedial or substantive.

---

was solely representing the Sturts, they would have had no need to hire their own attorney to protect them from personal liability, as the Grange attorney should have done so. Grange's argument admits that there were two separate interests, which would require two separate attorneys.

"A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively. * * * On the other hand, a retroactive statute is substantive—and therefore *unconstitutionally* retroactive—if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Id.* at 354, 721 N.E.2d at 33.

In support of their argument, the Sturts claim that they had a right to recover the attorney fees for the declaratory judgment action. The Sturts claim that their right to attorney fees had vested at the time of the effective date of the statute. However, on the September 24, 1999 effective date of R.C. 2721.16, the Sturts had no rights to attorney fees. No judgment had been entered in the declaratory judgment action. Since only the prevailing party is entitled to recover attorney fees, the Sturts had no such entitlement at that time because they had not yet prevailed. Thus, R.C. 2721.16 is not being applied unconstitutionally to the Sturts. The first assignment of error of the cross-appeal is overruled.

Next, the Sturts claim that they should recover attorney fees incurred prior to the effective date of the statute. There is no authority for doing such a thing. At the time that the Sturts actually prevailed in the matter, the statute prohibiting recovery of any attorney fees for declaratory judgment was already in effect. As discussed above, the right to recover attorney fees had not vested prior to February 1, 2000. Thus, no recovery of attorney fees is permitted by the statute. The second assignment of error of the cross-appeal is overruled.

The judgment of the Court of Common Pleas of Lucas County is affirmed.

*Judgment affirmed.*

WALTERS, P.J., and HADLEY, J., concur.

SUMNER E. WALTERS, P.J., RONALD E. HADLEY, and THOMAS F. BRYANT, JJ., of the Third Appellate District, sitting by assignment in the Sixth Appellate District.