MECHANICAL CONTRACTORS ASSOCIATION OF CINCINNATI,
INC. et al., Appellants and Cross–Appellees,

v.

UNIVERSITY OF CINCINNATI, Appellee and Cross–Appellant.

[Cite as *Mechanical Contrs. Assn. of Cincinnati, Inc. v. Univ.
of Cincinnati*, 152 Ohio App.3d 466, 2003-Ohio-1837.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–689.

Decided April 10, 2003.

Bricker & Eckler, LLP, and Luther L. Liggett Jr.; Smith, Currie & Hancock, L.L.P., and Aubrey L. Coleman Jr., for appellants.

Jim Petro, Attorney General, and William C. Becker, Assistant Attorney General, for appellee.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiffs-appellants, who include various Cincinnati area construction contractors and trade associations, appeal from the Ohio Court of Claims' May 20, 2002 judgment, issued on remand, finding that although plaintiffs could state a claim for monetary damages, none of the plaintiffs proved its entitlement to damages or attorney fees. Defendant-appellee, University of Cincinnati ("the university"), cross-appeals from the same judgment. The judgment follows years

of litigation in which plaintiffs were successful in obtaining a judicial declaration, together with an injunction, that the university must comply with competitive bidding laws contained in R.C. Chapter 153 on the university's public construction projects. See *Mechanical Contrs. Assn. of Cincinnati, Inc. v. Univ. of Cincinnati* (2001), 141 Ohio App.3d 333, 750 N.E.2d 1217, discretionary appeal not allowed, 92 Ohio St.3d 1418, 748 N.E.2d 550 (*"Mechanical Contractors I"*).

{¶ 2} In December 1996, the university entered into an agreement with Fifth Third Leasing Company to have a conference center built ("the project"). Pursuant to the agreement, Fifth Third agreed to sublease the project and its site back to the university in return for the university's payment of "rent" over a 27–year period, ultimately resulting in the university's ownership of the project. At the same time, Fifth Third entered into a development agreement with Walsh, Higgins & Company ("Walsh, Higgins"), an Illinois developer, for construction of the project. Walsh, Higgins, in turn, entered into an agreement with its wholly owned subsidiary, Walsh Construction Company ("Walsh Construction"), to act as the general contractor for the project and to select subcontractors through a bidding process consistent with standard business practice in the industry for private construction projects.

{¶ 3} After receiving notice of the construction project and before bidding on the project had begun, various Cincinnati area construction contractors, their trade associations, and a taxpayer (collectively, the *Tiemann* plaintiffs) filed a complaint in the Court of Claims on June 30, 1997 against the university. The complaint requested declaratory and injunctive relief to prevent the university from proceeding with the construction project unless it complied with various state public works statutes and the competitive bidding statutes contained in R.C. Chapter 153.

{¶ 4} On October 16, 1997, after a trial on the merits, the Court of Claims entered judgment (1) declaring that the university was not relieved from complying with Ohio public works and competitive bidding laws, (2) permanently enjoining the university from proceeding any further on the project without complying with the public works and bidding laws, (3) dismissing three of the *Tiemann* plaintiffs for failure to prosecute their claims, and (4) denying the remaining *Tiemann* plaintiffs' request for attorney fees. Both parties appealed from the court's judgment and, on November 6, 1997, this court granted the university's motion to stay the trial court's judgment, including the permanent injunction, pending appeal.

{¶ 5} In February and March 1998, Walsh Construction conducted bid proceedings for work to be done on the project, including plumbing, electrical, and heating and air conditioning work. Prior to receiving a bid on the project, Walsh Construction gave each prospective contractor bid documents pertaining to the

work being offered on the project. The bid instructions notified the bidders that contracts would be awarded to the "lowest responsive and responsible bidder" as determined at the discretion of Walsh Construction, with Walsh Construction reserving the right to accept or reject any or all bids, in whole or in part, including alternate bid items submitted by bidders. (Supplementary Instructions to Bidders, 3.3.1 and 3.4.1.) The instructions further notified bidders that Walsh Construction would privately open and analyze the bids. (Supplementary Instructions, 3.2.2.) The bid procedures utilized for the project did not comply with the competitive bidding statutes set forth in R.C. Chapter 153 for public construction projects. *Mechanical Contractors I*, supra.

{¶ 6} Several of the *Tiemann* plaintiffs, who included several of the instant plaintiffs, submitted bids on the project, but Walsh Construction deemed them all not to be the "lowest responsive and responsible bidder" on the work for which their bids were submitted, and none was awarded a contract for the project.

{¶ 7} On April 21, 1998, this court issued its decision concerning the appeal of the Court of Claims' October 16, 1997 judgment. In it, this court affirmed the Court of Claims' jurisdiction over the *Tiemann* plaintiffs' claims for declaratory judgment and injunctive relief, but this court held that all the plaintiffs who had brought the action either (1) did not have standing or (2) were properly dismissed from the action because they had failed to prosecute their case or had not yet bid on the project at the time the suit was filed, with the result that their claimed injury was merely speculative. *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312, 324–326, 712 N.E.2d 1258. With no plaintiffs remaining in the action, this court deemed moot, and did not decide, whether the trial court erred in holding that the university must comply with the public works and competitive bidding laws. Id. at 326, 712 N.E.2d 1258. As a result, this court also did not decide the propriety of the permanent injunction the Court of Claims issued against the university. Presumably, the permanent injunction the Court of Claims issued on October 16, 1997, stayed by this court on November 6, 1997, was dissolved upon remand of the case for disposition in accordance with this court's opinion. Id.

{¶ 8} On July 10, 1998, after the *Tiemann* plaintiffs dismissed their complaint, and after further bidding and some construction on the project had occurred, the instant plaintiffs filed the present action in the Court of Claims. Once again, plaintiff contractors and trade associations from the Cincinnati area requested a declaratory judgment, this time seeking a declaration that the university, by virtue of the bidding that had occurred on the project, violated the competitive bidding statutes in awarding contracts for the project. Again, plaintiffs sought an injunction, seeking to prohibit the university from undertaking further construction in violation of the competitive bidding statutes. In

addition to declaratory and injunctive relief, plaintiffs requested "monetary damages for detrimental reliance in bidding, and lost profits," costs and reasonable attorney fees pursuant to R.C. 2721.09, and "any further relief to which the Plaintiffs may be entitled."

{¶ 9} On April 20, 1999, the Court of Claims granted partial judgment to plaintiffs, declaring that the project at issue is not a private construction project but instead is a state public improvement project over which the university has ultimate use and control. In that same entry, the Court of Claims found the university in violation of R.C. Chapter 153 for its failure to use competitive bidding in constructing the project; the court permanently enjoined the university from any action in furtherance of bidding of any contract that is not in compliance with R.C. Chapter 153. For reasons not set forth in its order, the court's injunction applies only to projects "other than for the project in this action." (April 20, 1999 entry.)

{¶ 10} Following a trial on the issue of damages, the Court of Claims on May 22, 2000, entered final judgment, summarily holding that "[b]ased upon the evidence presented * * * plaintiffs are not entitled to any relief beyond" the injunctive relief granted on April 20, 1999. The court denied plaintiffs money damages, prejudgment interest, and attorney fees.

{¶ 11} On cross-appeals by the parties, a majority of this court held, in a split decision, that the Court of Claims correctly ruled that the university was required to follow the competitive bidding laws contained in R.C. Chapter 153 but that the Court of Claims erred in holding that plaintiffs are entitled to no further relief than injunction. *Mechanical Contractors I* at 339, 343, 750 N.E.2d 1217. The majority of this court stated:

{¶ 12} "This litigation has been ongoing for years. The plaintiffs have unceasingly attempted to compel the university to comply with the law and, based upon this record, have had good reason to anticipate that they might eventually, at the very least, recoup in the form of damages a portion of the extraordinary efforts and funds expended. Ultimately, if this court sustains the damages holding, these plaintiffs win only a very expensive, hollow victory in the form of a retrospective, virtually inconsequential wrist-slap to the university and a prospective cautionary declaration. The latter should certainly benefit the public; however, if plaintiffs are not granted more than a hollow victory, an understandable chilling effect would ensue upon future similarly situated would-be plaintiffs." Id. at 343, 750 N.E.2d 1217. This court reversed the judgment on damages and "remanded to the trial court for a determination of the nature and extent of damages to be awarded." Id.

{¶ 13} On remand, relying on evidence presented at the earlier damages trial, the Court of Claims, on May 20, 2002, issued its decision on damages. See 119

Ohio Misc.2d 109, 2002-Ohio-3506, 774 N.E.2d 795. The court found that although the university did not represent that it would comply with the public bidding requirements of R.C. Chapter 153, the university should have been complying with the provisions of R.C. Chapter 153 from the beginning of the construction project, and it would have been reasonable for bidders to rely on the university's being bound by these statutory provisions. Id. at 114, 774 N.E.2d 795. The court found that under the equitable theory of promissory estoppel, those plaintiffs that prove that they would have been awarded a subcontract if R.C. Chapter 153 had been followed may state a claim for damages, limited to the cost of bid preparations. Id. The court analyzed each plaintiff's claim, found none of the individual plaintiff contractors proved that it was the lowest responsive and responsible bidder, and concluded that plaintiffs thus were entitled to no monetary damages. Id. at 114–118, 774 N.E.2d 795. The court further concluded that plaintiffs failed to prove their claim for attorney fees. Id. at 118, 774 N.E.2d 795.

{¶ 14} Plaintiffs appeal from the Court of Claims' May 20, 2002 decision on remand, assigning the following errors:

{¶ 15} "1. The trial court erred by denying [an] award of money damages as a matter of law.

{¶ 16} "2. The trial court erred in not awarding damages on uncontroverted evidence, with pre-judgment interest and attorney fees as a matter of public policy."

{¶ 17} The university cross-appeals, assigning the following errors:

{¶ 18} "1. The trial court erred in holding that plaintiffs had stated a claim for damages under a theory of promissory estoppel when there had been no misrepresentation by the defendant university on which the plaintiffs could have relied, and plaintiffs had failed to seek an injunction with diligence.

{¶ 19} "2. The trial court erred when it failed to dismiss the claims of ESI, Inc. and the Fred A. Nemann Company for lack of standing, when ESI, Inc. failed to join in the complaint as a party and the Fred A. Nemann Company did not bid on the project.

{¶ 20} "3. The trial court erred in failing to find the claims of Village Building Services, Inc. and National Electrical Contractors Association were barred by the doctrine of *res judicata* because they failed to appeal their dismissal on the merits from earlier litigation involving the same issues between the same parties."

{¶ 21} Raising assignments of error identical to those presented to this court in *Mechanical Contractors I*, plaintiffs collectively seek review of the Court of Claims decision, issued on remand, denying money damages, prejudgment interest, and attorney fees. Plaintiffs assert that the Court of Claims correctly found

that plaintiffs may recover on the equitable theory of promissory estoppel, but the court improperly restricted an award of damages by (1) limiting an award to those plaintiffs who prove that they would have been awarded a subcontract if the requirements in R.C. Chapter 153 had been followed, and (2) limiting damages to the cost of bid preparations, thereby excluding prejudgment interest and reasonable attorney fees needed to make plaintiffs whole. Plaintiffs instead contend that they are entitled as a matter of law to an award of money damages, both for bid preparation costs and for lost profits for contracts plaintiffs should have received that were misawarded to other contractors where (1) uncontroverted evidence demonstrated that the project was a public works project to which the bidding statutes applied, and (2) plaintiffs relied to their detriment in submitting bids that the university did not review in accordance with the statutory requirements.

{¶ 22} Initially, we disagree with plaintiffs' contention that this court in *Mechanical Contractors I* "directed" an award of monetary damages to be made to plaintiffs on remand. To the contrary, this court held that, under the circumstances of this case, the trial court erred to hold *as a matter of law* that plaintiffs are entitled to no further relief than injunction. Id. at 343, 750 N.E.2d 1217. While noting that plaintiffs "have had good reason to *anticipate* that they *might* eventually * * * recoup in the form of damages a portion of the extraordinary efforts and funds expended[,]" this court left it to the trial court to determine the nature and extent of damages to be awarded and accorded the court "wide latitude" in fashioning a remedy. (Emphasis added.) Id. Applying this court's decision, the Court of Claims concluded on remand that plaintiffs may state a claim for monetary damages under the equitable theory of promissory estoppel but that damages must be limited to bid preparation costs.

■ {¶ 23} Promissory estoppel is an equitable doctrine designed to prevent harm resulting from one's reasonable and detrimental reliance upon false representations of another. *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. See, also, *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492. Applying the theory of promissory estoppel to similar situations, authorities in other jurisdictions suggest that if a public entity fails to follow competitive bidding procedures and misawards a public works contract, a "disappointed bidder" may recover monetary damages where the bidder should have been awarded the contract and incurred costs preparing and submitting its bid for the public works project in reliance on the public entity's duty to follow competitive bid statutes. See *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.* (2000), 23 Cal.4th 305, 315, 96 Cal.Rptr.2d 747, 1 P.3d 63.

{¶ 24} As to what monetary damages may appropriately be granted to a "disappointed bidder" where a public works contract was misawarded to another bidder, the question is unresolved in Ohio. Several other jurisdictions permit monetary damages in the form of bid preparation costs. Id. at 315–318, 319, 96 Cal.Rptr.2d 747, 1 P.3d 63, fn. 5 and 6. Only a few permit disappointed bidders to recover anticipated lost profits. See *Durant v. Laws Constr. Co., Inc.* (Miss. 1998), 721 So.2d 598, 604–607; *Bradford & Bigelow, Inc. v. Commonwealth* (1987), 24 Mass.App. 349, 509 N.E.2d 30, 35 37. See, also, *Kajima* at 319–321, 96 Cal.Rptr.2d 747, 1 P.3d 63. Courts that have awarded monetary relief to disappointed bidders often do so because injunctive relief is no longer available as an effective form of relief, as where work on the contract has already started or is complete by the time the court decides the case.

{¶ 25} Plaintiffs assert that while the Court of Claims properly found that plaintiffs may state a claim for damages under promissory estoppel in the case at bar, the court erroneously placed an improper burden upon plaintiffs to prove their damages, requiring plaintiffs to prove that they would have been the lowest responsive and responsible bidders if the competitive bidding laws in R.C. Chapter 153 had been followed. Plaintiffs contend that they cannot possibly prove which contractor would have been the "successful" bidder if the statutory requirements had been followed because the bidding procedures used in this case substantially deviated from competitive bidding requirements. Plaintiffs submit that the university, as the party who violated the statutory bidding requirements, should bear the burden to prove that it awarded contracts to bidders who would have been the lowest responsive and responsible bidders if the university had followed the competitive bidding requirements contained in R.C. Chapter 153.

{¶ 26} The university, in response, contends that plaintiffs, as the claimants seeking damages, properly had the burden of proving that, but for the unlawful bidding procedures the university utilized, plaintiffs would have been the successful bidder on a contract.

{¶ 27} Regardless of who bears the burden of proof, it is not possible as a practical matter to prove which contractor[s] would have been the lowest responsive and responsible bidder[s] for the contracts at issue if the competitive bidding laws had been followed. "Competitive bidding is based on the premise that submitted proposals will be susceptible [of] being judged as 'apples to apples.'" *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 601, 653 N.E.2d 646. Usually, the initial bids bidders submit can be compared to determine which bid is the lowest. However, here, in their initial bid proposals, the bidders were allowed, and apparently encouraged, to propose their own "alternates" for materials or design work that was contained in the contract specifications of the bidding documents. The evidence indicates that

when a bidder proposed an alternate material or design, Walsh Construction would not necessarily share the proposed alternate with the other bidders to allow them an opportunity to bid on the suggested material or design alternative. Thus, the initial bids that were submitted cannot reasonably be judged on an "apples to apples" basis. Moreover, after initial bids were received, many, but not all, of the bidders were allowed one or more opportunities to "clarify," "revise," and amend their initial bids, rendering the "final" bids of the various bidders incapable of true and fair comparison. See *Danis Clarkco,* supra; *Chillicothe Bd. of Edn. v. Sever–Williams Co.* (1970), 22 Ohio St.2d 107, 51 O.O.2d 173, 258 N.E.2d 605, paragraph three of the syllabus, certiorari denied (1970), 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155. However, even if it is unnecessary to establish which bidder(s) would have been the "successful" bidder(s) under the competitive bidding requirements in R.C. Chapter 153, plaintiffs did not establish their entitlement to damages in this case.

{¶ 28} The dispositive question in evaluating plaintiffs' promissory-estoppel claim is whether plaintiffs submitted their bids for this project in reasonable reliance that the university would comply with the statutory competitive bid procedures in R.C. Chapter 153. In its decision on remand, the Court of Claims concluded that plaintiffs would have been reasonable in submitting their bids on the project in reliance on the university's being bound to follow the competitive bidding statutes contained in R.C. Chapter 153, despite the fact the university did not represent that it would comply with those laws. Our review, however, reveals that plaintiffs' reliance on the university's complying with the competitive bid procedures in awarding contracts for this project would not have been reasonable, given the unique facts and circumstances in this case and plaintiffs' collective knowledge and experience in the ongoing litigation against the university. See *Doe v. Blue Cross/Blue Shield,* supra, at 381, 607 N.E.2d 492 (noting reliance is a necessary element of estoppel, which reliance must be reasonable and made in good faith).

{¶ 29} As the Court of Claims concluded, the university is expected to follow applicable statutory mandates. However, whether the competitive bidding laws in R.C. Chapter 153 are applicable and must be followed in the bidding and contract awards for this particular project has been the center of this ongoing litigation since June 1997. One of the great difficulties in this case is that the issue was not definitively resolved until April 20, 1999, when the Court of Claims granted partial judgment declaring that the project at issue is a state public improvement project, not a private construction project, and to which the competitive bidding requirements in R.C. Chapter 153 apply. The trial court's declaratory ruling was affirmed on appeal in *Mechanical Contractors I* at 340–342, 750 N.E.2d 1217.

{¶ 30} Unfortunately, both court decisions were issued *after* the subject bid proceedings occurred in this case during February and March 1998. The Court of Claims' judgment in *Tiemann*, which not only declared that the university must comply with Ohio's competitive bidding laws, but also permanently enjoined the university from proceeding on this project without complying with the laws, was stayed on appeal in *Tiemann* before this project's bidding occurred. When this court issued its decision in *Tiemann* after the bidding, this court did not address the propriety of the Court of Claims' declaratory ruling because the issue was moot. The issue remained unresolved until plaintiffs' success in the instant declaratory action.

{¶ 31} If in this case the Court of Claims' October 16, 1997 declaratory judgment and permanent injunction, which required the university to comply with the competitive bidding laws on this project, had been in effect at the time of plaintiffs' bids *or* if the university had represented in the bid documents that it would comply with the statutory bid procedures, plaintiffs could have reasonably or in good faith relied on the university's following competitive bid procedures for this project. However, the critical element of "reliance" is lacking to establish plaintiffs' claim of promissory estoppel where (1) the university did not represent in its bid documents for this project that the competitive bid procedures contained in R.C. Chapter 153 would be followed, and (2) at the time plaintiffs submitted their bids for this project, no court ruling in effect either declared that the university must comply with the statutory procedures or enjoined it from noncompliance.

{¶ 32} Accordingly, plaintiffs did not establish their promissory-estoppel claim and are not entitled to an award of monetary damages, or prejudgment interest on such damages, based on their alleged detrimental reliance in preparing and submitting bids on this project. Having thus decided, we do not address what monetary damages would have been appropriate. Plaintiffs' assignments of error based on the Court of Claims' denial of monetary damages and prejudgment interest are overruled.

{¶ 33} Plaintiffs also assign as error the Court of Claims' refusal to award attorney fees to plaintiffs as the prevailing parties in this action. Plaintiffs contend that the Court of Claims erred in denying their request for attorney fees where (1) plaintiffs' actions as "private attorneys general" were successful in compelling the university to comply with the competitive bidding laws, thereby benefiting the public, and (2) R.C. 2721.09 permits an award of attorney fees as "further relief granted" to the prevailing party in a declaratory judgment action.

{¶ 34} The Ohio Supreme Court has long held that although a public benefit may result from a plaintiff's successful litigation, an award of attorney fees is not proper unless a specific statutory authorization for awarding such fees exists.

See *Sorin v. Warrensville Hts. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. Therefore, to the extent plaintiffs based their request for attorney fees solely on their success as "private attorneys general" whose efforts achieved a public benefit, an award of attorney fees was properly denied.

{¶ 35} Plaintiffs, however, also relied upon R.C. 2721.09 to support their request for attorney fees. R.C. 2721.09 permits an award of attorney fees as "further relief" to a prevailing party following declaratory judgment.

{¶ 36} On September 24, 1999, after plaintiffs filed this action, R.C. 2721.09 was amended by H.B. No. 58, making R.C. 2721.09 subject to R.C. 2721.16. In pertinent part, R.C. 2721.16 limits a court's authority to award attorney fees to where (1) "[a] section of the Revised Code explicitly authorizes a court of record to award attorney's fees on a claim for declaratory relief under this chapter," or (2) an award of attorney fees is authorized by R.C. 2323.51 (the "frivolous conduct" statute), by the Civil Rules, or by an award of punitive or exemplary damages against the party ordered to pay the attorney fees. R.C. 2721.16(A)(1)(a) and (b). Section 3(A) of the legislative history of R.C. 2721.16 indicates that it was intended to supersede the holding in *Motorists Mut. Ins. Co. v. Brandenburg* (1995), 72 Ohio St.3d 157, 648 N.E.2d 488, and its progeny. In *Motorists Mut.*, the Ohio Supreme Court held that "[a] trial court has the authority under R.C. 2721.09 to assess attorney fees based [solely] on a declaratory judgment issued by the court." Id. at syllabus.

{¶ 37} Plaintiffs first contend that R.C. 2721.09, prior to its amendment by H.B. No. 58, controls plaintiffs' statutory request for attorney fees because that version was in effect at the time plaintiffs filed their complaint and specifically pleaded R.C. 2721.09 as a statutory basis for attorney fees. Plaintiffs argue that R.C. 2721.09, as amended, is unconstitutional as a retroactive impairment of plaintiffs' right to attorney fees under former R.C. 2721.09.

{¶ 38} R.C. 2721.16(B)(2) expressly applies to "[a]n action or proceeding that was commenced prior to [September 24, 1999], that is pending in a court of record on that date, and that seeks declaratory relief under this chapter." As noted, plaintiffs' declaratory claim, for which attorney fees were requested, was pending at the time R.C. 2721.16 became effective and was incorporated into R.C. 2721.09. Therefore, R.C. 2721.16 applies to plaintiffs' request for attorney fees under R.C. 2721.09.

{¶ 39} Further, R.C. 2721.16 is not applied in an unconstitutionally retroactive manner because its provisions are remedial in nature, rather than substantive. R.C. 2721.16(B); *Harkai v. Scherba Industries, Inc.*, Medina App. No. 02CA0007–M, 2003-Ohio-366, 2003 WL 187662; Jewett v. Owners Ins. Co. (Mar. 11, 2002), Licking App. No. 01–CA–38, 2002 WL 423472; *McIntosh v. Osnaburg*

*Local School Dist.* (June 11, 2001), Stark App. No. 2000–CA–56, 2001 WL 765611; *Horstman v. Cincinnati Ins. Co.* (Nov. 17, 2000), Montgomery App. No. 18430, 2000 WL 1720139. See *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 354, 721 N.E.2d 28 (holding that purely remedial statutes do not violate the Ohio Constitution even when applied retroactively). Moreover, because plaintiffs had not yet obtained final judgment before R.C. 2721.09 was amended, they were not yet entitled to recover, as the prevailing party, attorney fees under the prior version of the statute. *Sturt v. Grange Mut. Cas. Co.* (2001), 145 Ohio App.3d 70, 76, 761 N.E.2d 1108.

{¶ 40} Plaintiffs did not claim below, nor do they contend in this appeal, that they were entitled to attorney fees pursuant to R.C. 2721.16(A)(1)(b), based on an attorney fees award authorized by the frivolous conduct statute, the Civil Rules, or by an award of punitive or exemplary damages against the university. However, for the first time on appeal, plaintiffs assert that if R.C. 2721.16 applies, they are entitled to attorney fees in accordance with R.C. 2721.16(A)(1)(a), which allows a court to award attorney fees on a claim for declaratory relief if a section of the Revised Code specifically authorizes such an award. Plaintiffs contend that R.C. 2335.39 provides the statutory authorization for an award of attorney fees in this case.

{¶ 41} Pursuant to R.C. 2335.39, a party who prevails in an action or appeal involving the state, or one of its institutions, is entitled, *upon filing a motion in accordance with the statute,* to compensation for attorney fees incurred by the prevailing party in connection with the action or appeal where (1) the state institution was not substantially justified in initiating the matter in controversy, (2) there are no special circumstances that make the award unjust, and (3) the prevailing party did not engage in conduct during the course of the action or appeal that unduly and unreasonably protracted the final resolution of the matter in controversy. R.C. 2335.39(B)(1) and (2); *State ex rel. R.T.G., Inc. v. State of Ohio,* 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998. The state bears the burden of proving that attorney fees should not be awarded. R.C. 2335.39(B)(2). The university, as a state institution, is an instrumentality of the state of Ohio within the meaning of the statute. See R.C. 2335.39(A)(6), 2743.01(A), and *McIntosh v. Univ. of Cincinnati* (1985), 24 Ohio App.3d 116, 118, 24 OBR 187, 493 N.E.2d 321.

{¶ 42} As the prevailing parties in this civil action involving the university, plaintiffs arguably would have been entitled under R.C. 2335.39 to compensation for attorney fees plaintiffs incurred in connection with this action. In *R.T.G.,* the Ohio Supreme Court construed the language of the statute as permitting attorney fees where the state either initiates conduct that gave rise to the litigation or initiates litigation caused by the controversy. The court found that the plaintiffs

in *R.T.G.* qualified for attorney fees under R.C. 2335.39 where the state did not follow statutory mandates regarding the initiation of appropriation proceedings in a condemnation action. Analogously, in this case, the university did not follow statutory mandates regarding competitive bidding on public works projects, which conduct gave rise to the instant litigation by plaintiffs.

{¶ 43} Plaintiffs, however, did not file a motion with the Court of Claims in accordance with the provisions of R.C. 2335.39 to receive compensation for attorney fees as authorized by that statute. R.C. 2335.39(B)(1) expressly provides:

{¶ 44} "[T]he prevailing eligible party is entitled, *upon filing a motion in accordance with this division,* to compensation for fees incurred by that party in connection with the action or appeal. Compensation, when payable to a prevailing eligible party under this section, is in addition to any other costs and expenses that may be awarded to that party by the court pursuant to law or rule.

{¶ 45} "A prevailing eligible party that desires an award of compensation for fees *shall file a motion* requesting the award with the court *within thirty days after the court enters final judgment* in the action or appeal." (Emphasis added.)

{¶ 46} The statute further provides the party's motion "shall do all of the following": identify the party as the prevailing eligible party who is entitled to an award of attorney fees, include a statement that the state's position in initiating the matter in controversy was not substantially justified, indicate the amount sought as an award, and itemize all fees requested. R.C. 2335.39(B)(1)(a) through (e). The party's request for attorney fees is reviewed by the court "[u]pon the filing of a motion under this section." R.C. 2335.39(B)(2).

{¶ 47} Plaintiffs did not file in the trial court a motion for attorney fees under R.C. 2335.39, within 30 days after final judgment had been entered, that met the statutory requisites of R.C. 2335.39(B)(1)(a) through (e), as subsection (B)(1) of the statute expressly requires. Where the statute sets forth specific requirements for a party to invoke a court's discretion to award attorney fees under the statute and plaintiffs did not meet those requirements by filing a proper motion in accordance with the statute, plaintiffs may not merely bootstrap a belated nonconforming request for attorney fees under R.C. 2335.39 onto their request filed in the Court of Claims under R.C. 2721.09. Accordingly, plaintiffs' request for fees in the trial court is ineffective concerning R.C. 2335.39. See *Corder v. Ohio Dept. of Rehab. & Corr.* (1996), 114 Ohio App.3d 360, 367, 683 N.E.2d 121 (noting that a party must bring a motion for attorney fees under the statute upon which the request is based). Plaintiffs' assignment of error is overruled regarding the Court of Claims' denial of an award of attorney fees to plaintiffs.

{¶ 48} This case, and the results obtained, have been difficult for all concerned because (1) the initial ruling on the key issue concerning the university's need to comply with R.C. Chapter 153 was rendered moot due to the *Tiemann* plaintiffs' lack of standing; and, as a result, (2) the key issue was not resolved until after the university had conducted its bidding process on this project and after the parties engaged in prolonged and costly litigation. Although monetary damages may potentially be available as a remedy where injunctive relief no longer provides a practical remedy to disappointed bidders, it may be problematic for bidders to actually recover such monetary damages, as this case demonstrates. We caution that the most appropriate and effective relief available in such situations is for bidders to seek early injunctive relief to enforce the competitive bidding laws, even though such injunctive relief was concededly ineffectual here due to the unique facts and procedural complexities of this case.

{¶ 49} Having overruled plaintiffs' two assignments of error, we need not address the university's three assignments of error on cross-appeal, as they are rendered moot. Accordingly, the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

LAZARUS and KLATT, JJ., concur.